PHILLIPS & ASSOCIATES
*Attorneys at Law*
585 STEWART AVENUE, SUITE 410, GARDEN CITY, NEW YORK 11530
TEL: (212) 248-7431 FAX: (212) 901-2107
WWW.NYCEMPLOYMENTATTORNEY.COM
A PROFESSIONAL LIMITED LIABILITY COMPANY

September 1, 2023

**Via ECF:**
Hon. Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

Re:     **Kira Boyle v. New York City Transportation Authority**
        **Dkt. No. 21-cv-10251**

Your Honor:

This firm formerly represented the Plaintiff, Kira Boyle ("Boyle" or "Plaintiff"), in the above-referenced action.  We write in response to Plaintiff's letter application filed at Dkt. No. 58 to reopen this matter pursuant to Fed. R. Civ. P. 60(b).  Although we take no position on the ultimate relief requested in Plaintiff's application, we write to address certain misstatements in Plaintiff's submission concerning the firm's representation of Plaintiff.[1]

As an initial matter, Boyle's declaration at ¶21 accuses me, who was the primary attorney representing Plaintiff, of not wanting to continue representing a "strong-minded homosexual woman", which is false.  I have represented hundreds of clients under almost every protected category under the law, including several LGBTQ+ clients and have received glowing reviews from these clients.  I categorically deny any accusation of bias and take such an accusation extremely seriously.  The decisions made by this firm regarding the representation of Plaintiff were solely based on the facts, evidence and claims presented, including the information that Plaintiff provided to her lawyers during the representation.  Plaintiff also claims in her declaration that she "repeatedly requested that [she] be assigned a different lawyer from Phillips & Associates as counsel, to no avail." (*See* Boyle Decl. ¶ 6).  This is also false.  The first time that Plaintiff ever told this firm that she desired a different lawyer was after the settlement conference.  The firm accommodated her request before ultimately withdrawing from the case.

**BOYLE'S DEPOSITION AND RESPONSES TO REQUESTS TO ADMIT**

At bottom, Plaintiff's submission claims that this firm made a "mistake" when it disbelieved Boyle's statements about her involved in a case called *Kira Boyle v. Eatz Restaurant Corp. dba Pete's Pizzeria, et al.*, (EDNY, 13-cv-2790)[2] (hereinafter the "*Eatz* matter").  As detailed below, that assertion is not only incorrect but also incomplete.  Plaintiff's declaration misleadingly omits a second case in which Plaintiff's involvement was also questioned, titled *Kira*

---

[1] As noted in our earlier letter, we are providing the information in this letter pursuant to N.Y. R. Prof. Cond. 1.6(b)(5), to defend against an accusation of wrongful conduct.
[2] The Complaint in the matter *Boyle v. Eatz*, (EDNY, 13-cv-2790) is annexed hereto as Exhibit A.

*Boyle v. Gaslight Inc.*, (Supreme Court, New York County, 151463/2015)[3] (hereinafter the "*Gaslight* matter"). This omission is particularly troubling given that this office provided Plaintiff's new counsel with this firm's entire file, including Boyle's deposition transcript.

At her deposition in this case, Boyle was first asked whether she experienced harassment at any other job to which Boyle responded "no". *See* Exhibit C, Boyle Deposition, p. 53:1-3. Defendant then followed up asking Boyle whether she had filed a complaint against a prior employer to which Boyle responded "[I] did. Yes." *Id*. at p. 53:7-9. Boyle then identified *another* dispute (not *Eatz* or *Gaslight)* against an unnamed past employer involving allegations of sexual harassment and sexual orientation discrimination. *Id*. at pp. 53:10-57:6. Boyle testified she was not "at liberty" to discuss this other unnamed matter per what Boyle alluded to was a settlement agreement she signed in that matter. *Id*. Boyle explained that in this other matter, that she was not represented by an attorney, the matter was not filed in Court, and she signed a piece of paper in her manager's office which she described as a settlement agreement in exchange for $5,000. *Id*. at pp. 57:15-58:11. Boyle denied that she sued any other past employers in Court and that this unnamed, unrepresented matter was the only other employer she had a past dispute against. *Id*. at p. 58:6-19. At no time did Boyle affirmatively testify she had been the Plaintiff in the *Gaslight* or *Eatz* matters.

Boyle was then shown the filed Complaint in the *Gaslight* matter which pled, *inter alia*, sexual harassment allegations. *Id*. at p. 65:6-24. Boyle denied she was the Plaintiff in that matter. *Id*. For example, Boyle denied in her deposition that she worked at "Gaslight" and denied that she ever worked at a restaurant on 14th street in Manhattan (where "Gaslight" was located). (*Id*., pp. 61:13-15, 62:2-4.) Boyle denied that she knew the attorney, Matthew Marks, who represented the Plaintiff in the *Gaslight* matter. (*Id*. at p. 63:5-6.) Boyle also denied that she knew the defendants in the *Gaslight* matter. (*Id*. pp. 63:23-64:6.) At no time did Boyle raise the existence of a confidentiality agreement covering the *Gaslight* dispute, just as she knew to do with the other above-mentioned unnamed matter that she settled for $5,000. Boyle's new counsel was in possession of this deposition transcript at the time she filed her application to reopen this matter, but wholly failed to address this testimony (Dkt. No. 58).

Boyle was also shown the Complaint in the *Eatz* matter at her deposition and denied she was the Plaintiff in this matter claiming that "[her name was] rare, but [she knew] there's people out there that do have [her name]." (Boyle Dep. 64:20-65:5.) Boyle similarly denied that she worked for a place called "Pete's Pizzeria" the d/b/a Defendant in the *Eatz* matter, and similarly denied knowing any of the parties or lawyers in the *Eatz* matter. (Boyle Dep. pp. 61:18-20; 62:5-6 63:2-3.) At no time did Boyle testify her sister impersonated her in the *Eatz* matter.

After Boyle's deposition, Defendant The New York City Transit Authority subpoenaed the defense attorney's files in the *Gaslight* and *Eatz* matters. The records obtained in the *Gaslight* matter included medical records which matched Boyle's date of birth and social security number, confirming that Boyle was in fact the Plaintiff in the *Gaslight* matter. This office promptly sent

---

[3] The Complaint in the matter *Boyle v. Gaslight,* 151463/2015 (Supreme Court, New York County) is annexed hereto as Exhibit B.

Boyle the records received in the *Gaslight* matter per the subpoena[4].  All of this information was provided to Boyle's new counsel.

Defendant also served two Requests to Admit that Boyle admit or deny she was the Plaintiff in the *Gaslight* and *Eatz* matters.  To prepare responses to the Requests to Admit, I, along with my colleague, Ms. Carranza, conferred telephonically with Boyle.  During the call, Boyle admitted she was the Plaintiff in the *Gaslight* matter contrary to her deposition testimony.  This office then responded to the Requests to Admit admitting Boyle was the Plaintiff in the *Gaslight* matter.  However, Boyle maintained she was *not* the Plaintiff in the *Eatz* matter.  Boyle, for the first time, claimed her sister "impersonated" her in the *Eatz* lawsuit stating her sister had stolen her identity in the past.  Boyle instructed me to "admit" Boyle was the Plaintiff in the *Eatz* matter to "cover up" her sister's apparent identity theft and fraud.  I refused to comply with Boyle's instructions.  However, because Boyle maintained she was not actually the Plaintiff in the *Eatz* matter, I responded to the Request to Admit in good faith by denying that Boyle was the Plaintiff in the *Eatz* matter.  *See* Exhibit D, responses to Requests to Admit.

THE SETTLEMENT CONFERENCE

On April 27, 2023, Ms. Carranza and I accompanied Boyle to the settlement conference before Magistrate Judge for the Southern District of New York Stewart Aaron.  A joint session was held where, among other things, Defendant MTA alerted the Court to Boyle's deposition testimony, which was characterized by Defendant as, at a minimum, untruthful, and potentially perjurious.  The parties were then separated into breakout rooms.  At no time did I speak with Boyle without Ms. Carranza present.

After Magistrate Judge Aaron spoke with Defendant, Judge Aaron pulled Ms. Carranza and me back into the Courtroom while Boyle remained in the breakout room.  Magistrate Judge Aaron indicated that Boyle appeared to be, at a minimum, untruthful, and misleading during her deposition and that Boyle may have committed perjury.  Magistrate Judge Aaron warned that the deposition testimony would likely adversely affect Boyle's case going forward before the district court and could result in a possible criminal referral for a perjury investigation.  Magistrate Judge Aaron further indicated that he planned to speak with Boyle directly to explain to her the potential consequences of her prior testimony and that any further untruthful responses by Boyle would have serious ramifications.  Before speaking with Boyle, Magistrate Judge Aaron gave Ms. Carranza and me the opportunity to speak with Boyle first before he entered the breakout room.  I, along with Ms. Carranza, elected to speak with Boyle to advise her of what had transpired with the Court and that Magistrate Judge Aaron wanted to discuss her deposition testimony.

At no time did I threaten Boyle that she would be arrested for perjury if she did not take "the settlement" as she claims in her declaration.  (*See* Boyle Decl. 11).  At that time, there was not even a settlement offer on the table and no negotiations had begun.  Ms. Carranza and I reentered the breakout room with Boyle and reported to her exactly what transpired in the

---

[4] To preserve any claim Ms. Boyle may have to assert attorney-client privilege over these materials we are not attaching them to this submission.  However, if the Court would like to review these materials, we respectfully request the opportunity to submit them *ex-parte* (with a copy to Ms. Boyle's new counsel only).

Courtroom.  Specifically, I (with Ms. Carranza present) explained that the Court indicated Boyle's deposition testimony appeared untruthful which, if confirmed, would negatively affect her case going forward before the District Judge, and that there was indication from the Court the testimony may be perjurious.  Consistent with my discussion with Magistrate Judge Aaron, I further explained that if Boyle was later found to have committed perjury, the Court indicated it may refer her to United States Attorney's Office for investigation.  I further explained that Magistrate Judge Aaron desired to speak with Boyle regarding her deposition testimony and reiterated the tantamount importance of being completely honest with the Court.

Contrary to paragraph 11 of Boyle's declaration, at no time did I instruct Boyle to only say "yes to Magistrate Judge Aaron or [she] would be arrested for perjury."  I, with Ms. Carranza present, discussed with Boyle her testimony regarding the *Eatz* matter to prepare her to speak directly to the Court.  Boyle again stated that her sister impersonated her but that she planned to tell Magistrate Judge Aaron she was the Plaintiff in the *Eatz* matter to "cover" for her sister so Boyle's sister would not "get in trouble".  I responded that we could not endorse that course of action and reiterated the need to be truthful with the Court.  Boyle then walked back the story that her sister impersonated her and admitted to me, with Ms. Carranza present, that Boyle had, after all, worked at Pete's Pizzeria and was the Plaintiff in the *Eatz* action.  Given that Boyle had given conflicting accounts, I questioned Boyle again as to whether she was the Plaintiff in the *Eatz* matter. Boyle again confirmed she was the Plaintiff in the *Eatz* matter and during her time working at Pete's, a kitchen staff employee grabbed her buttocks using a pair of cooking tongs (which was consistent with the allegations in the *Eatz* complaint (*see* Ex. A, ¶ 20)).

Based on Boyle's admission to us that she was the Plaintiff in the *Eatz* matter, notwithstanding her prior testimony to the contrary, the firm and its lawyers had certain ethical obligations, including to correct or withdraw her prior misstatement.  *See* NY RPC 3.3(a)(1); NY RPC 3.3(b).  At best, it was unclear whether Boyle was the Plaintiff in the *Eatz* matter given her conflicting accounts, though it appeared likely, based on Boyle's statements to us in the mediation, that she was.  In either case, her prior denial needed to be withdrawn as she was refusing to stand behind that any longer.  After consultation with ethics counsel, we spoke with Boyle about our ethical obligations as well as her options for moving forward.  In particular, we informed Boyle that her sworn testimony at her deposition needed to be withdrawn or corrected.  We also informed her *before* any settlement negotiations started that it was her decision whether to continue with the settlement conference with this firm's assistance or to end the settlement conference and determine next steps.

Throughout these discussions, I explained all available information to Boyle, even though some of the information was unpleasant for Boyle to hear, so that Boyle could make the best-informed decision regarding her case.  In connection with our obligation to withdraw Boyle's prior statements, at no time did I state that perjury had been committed. Instead, I only withdrew the statements denying Boyle's involvement with Pete's Pizzeria.  Nothing further was said.

After the firm withdrew the statements, I, with Ms. Carranza present, explained that it was Boyle's choice, if she desired, to begin a negotiation at the settlement conference with this firm's assistance.  I also explained that, alternatively, Boyle could choose to leave the conference without beginning a negotiation.  Boyle asked whether she was going to jail that day.  I explained that

Boyle was not going to jail and instead explained that in the event of no settlement, that the next steps were Defendant would make a summary judgment motion seeking to dismiss some or all of Boyle's claims.  I explained that some or all of Defendant's anticipated motion could potentially be denied based on the evidence presented but that her deposition testimony was a variable that may negatively affect that assessment.  At no time did I state that Boyle had committed perjury and that she would go to jail unless she settled the case that day.

Boyle then asked me to provide her with a recommendation.  I recommended settlement for a variety of reasons, but reiterated several times that this was merely a recommendation, and that Boyle ultimately had to decide, for herself, what she wanted to do.  Boyle then advised me, with Ms. Carranza present, to begin negotiating a settlement.  I confirmed Boyle's decision to pursue a settlement in a contemporaneous email sent from the breakout room during the conference[5].

Ultimately, towards the end of the settlement conference, Magistrate Judge Aaron presented a best and final settlement offer from Defendants of $29,999.  Boyle stated to us that she wanted to accept this offer.  I advised the Court that Boyle of Boyle's acceptance of the offer.  Magistrate Judge Aaron then entered our breakout room with a term sheet memorializing the core terms.  Boyle then signed the term sheet[6].  The Court then had the parties reenter the Courtroom where the settlement terms were read into the record.  Boyle again accepted the terms of the settlement.  *See* Exhibit E, transcript from the settlement conference.  At no time did I instruct Boyle to say "yes" to the Judge, or to the settlement, under threat of arrest.  Instead, Boyle agreed to the terms on the record on her own volition.  The only instruction I gave to Boyle was to make sure she spoke into the microphone.  At no time did Boyle indicate to the Court that she felt pressured or coerced by counsel to accept the settlement.

At no time did Boyle state or indicate she was suffering a panic attack.  At one point, Boyle asked to step outside the Courthouse to smoke a cigarette.  I stated she should not leave the Courthouse, as it would take too long to get back through security, and that it was improper to keep the Judge waiting.  I instead suggested Boyle step out into the Courtroom hallway to take a break.

Sometime after the settlement conference, Boyle indicated to this office she desired to revoke her acceptance of the settlement and, for the first time, indicated she wanted me removed from her case.  The firm complied with this request, but ultimately concluded that it was required to withdraw from the representation owing to the breakdown in the attorney-client relationship.  Boyle had spoken with the managing partner several times leading up to the settlement conference and did not ask for another attorney from this office to represent her.

### PLAINTIFF'S CLAIM OF "MISTAKE" UNDER FED. R. CIV. P. 60(B)

---

[5] To preserve any claim Ms. Boyle may have to assert attorney-client privilege over this email we are not attaching it to this submission.  However, if the Court would like to review these materials, we respectfully request the opportunity to submit them *ex-parte* (with a copy to Ms. Boyle's new counsel only).

[6] Neither our office nor Defense counsel have a copy of the term sheet.  It is my recollection that Magistrate Judge Aaron kept the term sheet for the Court's records, however, it is my understanding that it cannot currently be located.  We have spoken with Defense counsel who expressed the same recollection.

In her submission, Plaintiff argues that I "made a mistake" in not believing Boyle's assertion that she was not the Kira Boyle who sued *Eatz* or that extraordinary circumstances exist to reopen this matter.  Although the firm takes no position on the ultimate relief that that Plaintiff seeks, we categorically deny that we committed any mistake in our assessment of Boyle's statements or her role in the *Eatz* matter.  Boyle provided this firm with conflicting stories about her involvement in the *Eatz* case, claiming first that she was not a party, then ultimately telling us at the settlement conference that she was the plaintiff in that matter.  The firm did not pressure her into making these statements, but simply wanted the truth so it could comply with its ethical obligations and competently represent its client.[7]

The record also shows that Boyle voluntarily accepted the settlement on her own volitation. I, with Ms. Carranza present, had a duty to lay out all available information for Boyle so that she could make the best decision for her case.  At no time did I threaten Boyle that she would go to jail if she did not settle.  Boyle voluntarily elected to settle this case.

We thank the Court for its time and consideration of the herein matters.

Respectfully,
PHILLIPS & ASSOCIATES

/s/ _____
Joshua Friedman, Esq.
Phillips & Associates, PLLC
585 Stewart Avenue, Suite 410
Garden City, NY 11530
(212) 248-7431, ext. 215
jfriedman@tpglaws.com

Cc (via ECF): all counsel of record

---

[7] Indeed, the recent filing this afternoon of the declaration of Maimon Kirschenbaum (Dkt. at 61) stating that he does not believe that Boyle was the same person he represented in the *Eatz* matter confirms the struggles that we were having to get Boyle to tell us the truth.  As detailed above, at the mediation, while first claiming that the plaintiff in the *Eatz* matter was her sister, Boyle then insisted at the mediation it was her.  We therefore relied on her assurance that she was the plaintiff when we took steps to comply with our ethical obligations.